**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRIAN THOMPSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-0924** |
| **ROBERT TANNER, WARDEN** | **SECTION "C"(4)** |

## REPORT AND RECOMMENDATION

This matter, including the petitioner's **Motion to Stay (Rec. Doc. No. 11)**, was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that the motion and the entire matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.  Factual and Procedural Background

The petitioner, Brian Thompson ("Thompson") is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On June 22, 2009, Thompson was charged by Bill of Information in Jefferson Parish for the attempted second degree murder of Connika Proctor.[3] Thompson entered a plea of not guilty to the charge on June 24, 2009.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 4, Bill of Information, 6/22/09.

[4] St. Rec. Vol. 1 of 4, Minute Entry, 6/24/09.

The record reflects that, by May of 2009, Proctor, Thompson and another woman, Trashawn Wilson, worked together at a McDonald's restaurant.[5] Thompson and Proctor had known each other for about one and a half years. Thompson repeatedly indicated to Proctor that he wanted to start a relationship with her. Proctor told Thompson she liked girls and that a relationship with him would not happen. Nonetheless, Thompson told people that they were together in a relationship. At some point, Thompson's fiancée called Proctor to ask her about her relationship with Thompson.

On the evening of May 16, 2009, Proctor and her girlfriend were at Wilson's house on Pritchard Drive in Marrero. The three women went outside when they heard Thompson drive up honking the horn of his Suburban and yelling, "where Connika at[?]" Proctor and Thompson began a loud argument about Thompson's fiancée and his claims that they were in a relationship.

Thompson tried to place Proctor in a choke hold during the argument and she pushed him away. Proctor told Thompson, "I'll hit you," and he responded that he would shoot her if she did. At some point during the argument, Thompson walked back to his vehicle and Proctor followed him. Once he was inside the car, Proctor reached in through the driver's side window and struck Thompson in the head with her hand. Thompson immediately started shooting, striking Proctor four times before he drove away.

Jefferson Parish Sheriff's Deputy Mark Monson responded to a call about the shooting, and found Proctor lying on the front yard bleeding from multiple gunshot wounds. He believed that her life was in jeopardy so he asked who shot her. She replied, "Brian shot me." Proctor was transported to University Hospital where she was treated for four gunshot wounds, including two

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Thompson*, 106 So.3d 1102 (La. App. 5th Cir. 2012); St. Rec. Vol. 2 of 4, 5th Cir. Opinion, 12-KA-409, 12/11/12.

2

to her upper chest, one to her left arm, and one to her upper back. She remained in the hospital for six days, three of which she spent in critical care, before being discharged. Thompson surrendered to the police sixteen or seventeen days after the shooting.

Thompson was tried before a jury on March 6 and 7, 2012, and was found guilty as charged of attempted second degree murder.[6] At a hearing held on March 9, 2012, the trial court denied Thompson's motions for a new trial and for post-verdict judgment of acquittal.[7] After waiver of legal delays, the court sentenced Thompson to serve thirty (30) years at hard labor without benefit of parole, probation, or suspension of sentence.[8]

The State thereafter filed a multiple offender bill charging Thompson as a third offender.[9] Thompson entered a plea of guilty to the bill on October 15, 2012.[10] That same day, the court vacated the prior sentence and sentenced Thompson as a third offender to serve forty (40) years in prison at hard labor without benefit of parole, probation, or suspension of sentence.[11]

On direct appeal, Thompson's appointed counsel raised the following errors:[12] (1) the trial court improperly excluded evidence of the victim's violent nature; (2) the evidence was insufficient

---

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 3/6/12; Trial Minutes, 3/7/12; Jury Verdict, 3/7/12; Trial Transcript, 3/6/12; Trial Transcript, 3/7/12.

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 3/9/12; Sentencing Transcript, 3/9/12; Motion for New Trial, 3/9/12; Motion for Post-Verdict Judgment of Acquittal, 3/9/12.

[8]St. Rec. Vol. 1 of 4, Sentencing Minutes, 3/9/12; Sentencing Transcript, 3/9/12. The Court also assessed a $35 indigent defender fee. *Id.*; St. Rec. Vol. 2 of 4, Civil Money Judgment, 8/5/12.

[9]St. Rec. Vol. 1 of 4, Multiple Bill, 4/13/12.

[10]St. Rec. Vol. 2 of 4, Multiple Bill Sentencing Minutes, 10/15/12; Waiver of Right - Plea of Guilty as Multiple Offender, 10/15/12.

[11]St. Rec. Vol. 2 of 4, Multiple Bill Sentencing Minutes, 10/15/12; Waiver of Right - Plea of Guilty as Multiple Offender, 10/15/12.

[12]St. Rec. Vol. 1of 4, Appeal Brief, 12-KA-0409, 6/13/12.

to support the verdict in that it failed to prove beyond a reasonable doubt that the shooting was not done in self-defense; and (3) the evidence was insufficient to support the verdict as charged as it proved at best that the shooting was an attempted manslaughter done in the heat of passion. Thompson was granted leave to file a brief on his own behalf, but he failed to do so.[13]

On December 11, 2012, the Louisiana Fifth Circuit affirmed Thompson's conviction and sentence finding no merit in the second and third issues regarding the sufficiency of the evidence and finding that Thompson failed to preserve the first issue for appeal where there was no contemporaneous objection at trial.[14]

The Louisiana Supreme Court denied Thompson's writ application, in which he raised only the first two appellate issues, without stated reasons on August 30, 2013.[15] His conviction and sentence became final ninety (90) days later, on Monday, December 2, 2013,[16] because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (finding that the period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (finding that in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his

---

[13]St. Rec. Vol. 1 of 4, 5th Cir. Order, 8/13/12; Letter to the Circuit Court, dated 7/30/12.

[14]*Thompson*, 106 So.3d at 1102; St. Rec. Vol. 2 of 4, 5th Cir. Opinion, 12-KA-409, 12/11/12.

[15]*State v. Thompson*, 120 So.3d 258 (La. 2013); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2013-KO-0111, 8/30/13; La. S. Ct. Writ Application, 13-K0-111, 1/14/13 (dated 1/8/13); St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2013-KO-111, 1/14/13.

[16]The ninetieth day fell on Thursday, November 28, 2013, which was the legal holiday of Thanksgiving. La. Rev. Stat. § 1:55. Pursuant to La. Code Crim. P. art. 13, the end of the period then falls to the next non-holiday and non-weekend day. The next day, Friday, November 29, 2013, however, was declared by Governor Bobby Jindal to be Acadian Day, another recognized holiday when so declared. La. Rev. Stat. § 1:55(B)(3); La. Exec. Proclamation No. 162 BJ 2013 (Nov. 7, 2013). Therefore, Thompson's conviction and sentence became final the following Monday, December 2, 2013.

conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

## II. Federal Petition

On April 25, 2014, the clerk of this Court filed Thompson's federal petition for habeas corpus relief in which he asserts the following six grounds for relief:[17] (1) counsel was ineffective for failure to object to the trial court's exclusion of evidence of the victim's violent nature; (2) the State engaged in prosecutorial misconduct by soliciting false testimony or allowing false testimony to go uncorrected; (3) and (6) the evidence was insufficient to support the verdict where it proved attempted manslaughter done in the heat of passion; (4)(a) the Trial Court erred by improperly excluding evidence of the victim's violent nature, and (b) counsel erred in failing to object to the ruling; and (5) the evidence was insufficient to support the verdict where it failed to prove beyond a reasonable doubt that the shooting was not in self-defense.

The State filed a response in opposition to Thompson's petition conceding timeliness and urging that Thompson failed to exhaust state court remedies as to at least two of the claims raised.[18] Following the State's response, Thompson filed a **Motion to Stay (Rec. Doc. No. 11)** requesting that the Court stay these proceedings to allow him to exhaust available state court remedies.[19]

---

[17]Rec. Doc. No. 1, pp. 3, 4, 7, 10, 13.

[18]Rec. Doc. No. 12.

[19]Rec. Doc. No. 11.

### III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this Court no later than April 16, 2014.[21] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Thompson's federal petition was timely filed. The State also asserts that Thompson failed to exhaust available state court remedies as to all of the claims raised in his federal petition. The exhaustion defense is dispositive of Thompson's petition.

### IV. Exhaustion Doctrine

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be

---

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Thompson's federal habeas petition on April 25, 2014, when pauper status was granted. Thompson dated his signature on the form petition on April 16, 2014. This is the earliest date appearing in the record on which Thompson could ahve presented the to prison officials for mailing to a federal court.

dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32. When ineffective assistance of counsel is raised in the state courts, the claim is not exhausted where the petitioner did not raise or mention the same basis in the state court proceedings that are asserted in a federal petition. *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas

counsel claim to be unexhausted."); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (finding factual bases underlying the ineffective assistance of counsel claim were "significantly different" from those raised in state court, and therefore, were not exhausted).

The record reflects that Thompson raised the third, fifth and sixth claims (as identified above) on direct appeal to the Louisiana Fifth Circuit and in the related writ application to the Louisiana Supreme Court. These claims have been exhausted in the state courts. In those same state court proceedings, Thompson also exhausted review on claim number 4(a), where he contends that the state trial court erred in excluding evidence of the victim's violent nature.

He has not, however, presented to any state court the second part of that claim, part 4(b), in which he contends that counsel provided ineffective assistance in failing to object to the state trial court's exclusion of that evidence. He therefore has also failed to exhaust the first claim identified above where he directly argues that counsel provided ineffective assistance of counsel for that same reason. He also has not allowed the state courts an opportunity to consider his second claim raising prosecutorial misconduct for relying on false testimony.

Because Thompson did not present the ineffective assistance of counsel issue or the prosecutorial misconduct claim to any state court through the Louisiana Supreme Court, he has not exhausted state court remedies as to claims number one, two and part b of four. *See Baldwin*, 541 U.S. at 32. Under the plain language of the applicable law, Thompson has presented this Court with a "mixed petition," which includes both exhausted and unexhausted claims, and it is subject to dismissal for that reason. *See Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).

8

Thompson filed his Motion to Stay seeking to have this Court stay these proceedings rather than dismiss the petition to allow him to fully exhaust.[22] He is not, however, entitled to a stay of these proceedings where there has been no showing of good cause to provide that extraordinary relief. The Supreme Court has held that stay-and-abeyance is an extraordinary remedy not to be made readily available to a habeas petitioner. *Rhines v. Weber*, 544 U.S. 269, 278 (2005) (finding dismissal is appropriate where no good cause is shown for the failure to exhaust). The *Rhines* Court cautioned that a stay-and-abeyance "should be available only in <u>limited</u> circumstances," (emphasis added), and is appropriate <u>only</u> when the court determines that there was "good cause" for the failure to exhaust. *Id.*, at 277; *see also Pliler v. Ford*, 542 U.S. 225, 233 (2004). There is no such showing here.

In the Motion to Stay, Thompson does not offer any reason for his failure to pursue state court relief on all of the claims before filing his federal petition. As referenced above, Thompson sought leave but failed to file a *pro se* appellate brief in the Louisiana Fifth Circuit where he could have raised his claims. He did not pursue state post-conviction relief after his appeal, and only now suggests that he may do so. He has pointed to nothing that prevented him from pursuing complete exhaustion before filing in federal court. Further, his *pro se* status would not excuse his failure to exhaust. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding *pro se* status does not constitute "good cause" for failure to exhaust state remedies), *cert. denied*, 543 U.S. 989 (2004); *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007) (finding ignorance of the law does not constitute "good cause" for failure to exhaust). The motion to stay petition, therefore, should be denied.

Having found no good cause for his failure to exhaust, this mixed petition should be dismissed without prejudice to allow Thompson to fully exhaust available state court remedies as to all of his

---

[22]Rec. Doc. No. 11.

claims, unless he amends the petition to dismiss or exclude the unexhausted claims and proceed with only the exhausted claims. *Pliler*, 542 U.S. at 233 (citing *Rose*, 455 U.S. at 510).

V. **Recommendation**

It is therefore **RECOMMENDED** that Thompson's **Motion to Stay (Rec. Doc. No. 11)** be **DENIED**.

It is further **RECOMMENDED** that Thompson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[23]

New Orleans, Louisiana, this 16th day of September, 2014.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[23]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.